## AMES *v.* AUTO OWNERS INSURANCE CO.

1. INSURANCE—CONTRACTUAL RELATIONS NOT CREATED BY ESTOPPEL.
   While this court has frequently held that insurance companies are estopped by their conduct under certain circumstances from claiming the benefit of forfeitures and breaches of condition when they do not put their refusal to pay on such grounds, it has not gone so far as to bring into being a contract of insurance by estoppel alone.

2. SAME—DENIAL OF CONTRACTUAL RELATIONS—ESTOPPEL.
   A letter from the secretary-treasurer of an automobile insurance company to plaintiff, in response to a claim for the theft of an automobile, stating that no application covering said car had been received, and denying liability "until we have definite proof that the application was made and put in the mail before the car was stolen," *held*, not to estop the company from denying contractual relations with plaintiff.

3. SAME—APPARENT AUTHORITY OF AGENT NOT LIMITED BY SECRET LIMITATIONS.
   If the agent of defendant insurance company was held out by the company and by it clothed with the apparent authority of a general agent, and plaintiff relied upon such apparent authority, and so dealt with him, defendant could not defeat recovery by secret limitations of the agent's power.

4. SAME—LIMITED AGENT NOT A GENERAL ONE.
   Authority of an agent limited to solicit business only does not make him a general agent for all purposes; but even though his authority be limited he is the agent of the insurer, not of the insured, and this rule applies to mutual as well as to stock companies.

5. SAME—AGENT USUALLY HAS AUTHORITY TO EFFECTUATE INSURANCE.
   The agent of an insurance company is usually clothed with at least apparent authority to transact the business in hand, *i. e.*, the effectuating of insurance.

6. SAME—ASSUMPTIONS OF INSURED AS TO AUTHORITY OF AGENT—
   NOTICE.

 Although insured would be bound to assume, from the
   language of the application and the blank form of the
   policy, that the agent was not authorized to deviate from
   the form of policy then in use by insurer, he was not
   bound to know, where not otherwise informed, that the
   agent was without authority to bind his principal in strict
   accordance with the provisions and conditions of the
   policy.

7. SAME—AUTHORITY OF AGENT TO ACT GENERALLY—QUESTION FOR
   JURY.

 As to whether an agent of defendant insurance company
   was clothed with apparent authority to act generally for
   defendant in perfecting insurance, *held*, under the evi-
   dence, a question for the jury.

Error to Menominee; Flannigan (Richard C.), J.
Submitted October 2, 1923. (Docket No. 8.) De-
cided November 13, 1923.

Assumpsit by Louis C. Ames against the Auto
Owners Insurance Company on a policy of insurance.
Judgment for plaintiff on a directed verdict. Defend-
ant brings error. Reversed.

*Brown & Kelley,* for appellant.

*Doyle & Barstow,* for appellee.

Dr. A. Sanders was the agent of defendant at
Stephenson. He was not authorized by the com-
pany to issue policies of insurance, but was furnished
with a blank form of policy and blank applications
to which were attached receipts in form presently
detailed, with a perforation making them detach-
able. Shortly before June 16, 1920, Dr. Sanders
approached plaintiff on the subject of insurance on a
car recently purchased by him, and on that date plain-
tiff signed an application containing the following
language:

"I hereby apply for a policy in the Auto Owners Insurance Company, Lansing, Michigan, covering the following described automobile, and understand that agents have no authority to make or alter conditions of policy contracts issued herefrom."

Plaintiff had previously read the blank form of policy which contained the following language:

"No condition or provision of this policy shall be waived or altered except by written indorsement attached hereon and signed by a properly authorized officer of the company; nor shall notice to any agent, nor shall knowledge possessed by any agent or by any other person, be held to effect a waiver or change in any part of this contract.   Upon the acceptance of this policy the assured and company mutually agree that its terms embody all agreements then existing between himself and the company, or any of its agents, relating to the insurance described herein, and understand, further, that agents have no authority to make or alter any conditions of this policy."

Plaintiff paid the agent $7.50, being the amount of the premium then computed by Dr. Sanders for insurance for one year including loss by theft, and was given the following receipt:

"Received from L. C. Ames at Stephenson, Michigan, this 16th day of June, 1920, the sum of seven and 50/100 dollars, premium for insurance in the Auto Owners Insurance Company, Lansing, Michigan.
"AUTO OWNERS INSURANCE COMPANY,
"Capital National Bank Bldg.,
Lansing, Michigan.
"By A. SANDERS, Jr., Agent.
(Agent must sign here.)
"Agents are required to receipt the applicant with this form."

Later Dr. Sanders discovered that he had incorrectly computed the premium and on June 23d or 24th, plaintiff signed a similar application and paid the further sum of $3.50 and a like receipt was given him.   It further appears from the testimony of Dr.

Sanders that on June 24th he mailed to defendant the application together with his check for the premium less his commission. It appears from defendant's testimony that neither the application nor check reached its home office. On the evening of June 28th plaintiff's car was stolen and the following day he notified defendant and received the following reply:

"Mr. L. C. AMES,                                                    July 1, 1920.
    "Stephenson, Michigan.
    *"Dear Sir:* We have your letter reporting theft of Overland car.

    "Up to the present time we have not received your application to cover this car and therefore cannot accept the same as a liability until we have definite proof that the application was made and put in the mail before the car was stolen. If it comes to light at a later date we will advise you concerning our position in the matter.
                                "Yours very truly,
                        "AUTO OWNERS INSURANCE COMPANY,
"VVM/PT                  ·          By V. V. MOULTON,
                                        Secretary-Treasurer."

The trial judge entertained the view that defendant was estopped by this letter from making the defense it sought to make, *i. e.,* that it had no contractual relations with plaintiff, that it had waived such defense, and directed a verdict for plaintiff.

FELLOWS, J. (*after stating the facts*). We are unable to follow the trial judge in his reason for directing a verdict. This court has frequently held that insurance companies are estopped by their conduct under certain circumstances from claiming the benefit of forfeitures and breaches of condition when they do not put their refusal to pay on such grounds, but this court has not gone so far as to bring into being a contract of insurance by estoppel alone. In the recent case of *Ruddock* v. *Insurance Co.,* 209 Mich. 638, this court had this question before it and it was there held (we quote from the syllabus):

"The doctrine of waiver and estoppel has largely been applied in cases where the insurance companies have relied on forfeitures, and the courts have held that, if the companies have led the other party, to his prejudice, to his expense, to understand that such forfeitures would not be insisted upon, then the companies would be estopped from asserting such defenses. But the doctrine of waiver and estoppel cannot be applied so as to create a liability not created by the contract, or to create a liability contrary to the express provisions of the contract which the parties made."

Upon the authority of that case we must hold that defendant was not estopped by the letter of July 1st from insisting that it had no contractual relations with plaintiff. The letter had its proper place in the case and we shall have occasion to refer to it later.

We can not, however, follow defendant's contention that the court should have directed a verdict upon the ground that it appeared undisputedly that the agent only had authority to accept applications, and that plaintiff had no right to assume that he had the authority of a general agent. In the recent case of *Johnson* v. *Insurance Co.*, 224 Mich. 493, we had before us a case of an oral contract of insurance. We there pointed out the facts necessary to establish liability. That case is quite similar to the one now before us. In that case, however, the agent had the authority of a general agent. Manifestly, if the agent in the instant case was held out by the company and by it clothed with the apparent authority of a general agent, and plaintiff relied upon such apparent authority and so dealt with him, defendant could not defeat recovery by secret limitations of the agent's power. Limited authority of an agent to solicit business only does not make him a general agent for all purposes (*Randall* v. *Insurance Co.*, 206 Mich. 418) ; but even though his authority be limited he is the agent of the insurer, not of the insured, and this rule applies to mutual as

well as stock companies (*Blake* v. *Insurance Co.*, 194 Mich. 589).

The general public transact their business with insurance companies through representatives of such companies without actual notice of any limit upon the authority of such representatives.    The agent is usually clothed with at least apparent authority to transact the business in hand, *i. e.*, the effectuating of insurance.    In *Tubbs* v. *Insurance Co.*, 84 Mich. 646, we quoted with approval the following language from *Insurance Co.* v. *Wilkinson*, 13 Wall. (U. S.) 222:

"The powers of the agent are *prima facie* coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals."

See, also, *Pollock* v. *Insurance Co.*, 127 Mich. 460; *Greenwich Ins. Co.* v. *Waterman*, 54 Fed. 839; *Walsh* v. *Insurance Co.*, 30 Iowa, 133, 145 (6 Am. Rep. 664). In the last cited case it was said:

"The defendant cannot be permitted to escape liability from the acts or representations of an agent in the course of its business which he is authorized to transact, whereby a party dealing with it is induced to pay money in the belief that he will receive security in return.    The agent of defendant, as we have seen, was empowered to receive payments made to defendant in the course of its business.    Plaintiff could well rely upon the representations of the agent that the payment to him was the regular course to pursue in order to obtain the permit required.    If the acts of defendant and its agent induced the belief on the part of plaintiff that the permit was issued upon the payment of the money to the agent, defendant is estopped to deny it."

So far as this record discloses Dr. Sanders did not inform plaintiff that defendant had limited his authority.    Plaintiff could well have assumed, and probably

225—Mich.—4.

would be bound to assume, from the language of the application and the blank form of policy, that the agent was not authorized to deviate from the form of policy then in use by defendant; it was the form adopted by the company and approved by the commissioner of insurance; its conditions were not made and could not be changed by the agent; but plaintiff was not bound to know and could hardly be expected to know that the agent was without authority to bind his principal in strict accordance with the provisions and conditions of the policy. The agent was sent out with blank applications to which were attached blank receipts with perforations making them detachable, and we think the signature to these receipts might be given some significance by the jury. While there was a dotted line for the signature of the agent they purported to be and were executed in the name of the company acknowledging it (not the agent) had received the premium for the insurance. When the plaintiff, holding such a receipt, suffered a loss by theft he promptly notified defendant, and was met by the claim that it had not received his application and would not assume liability "until we have definite proof that the application was made and put in the mail before the car was stolen." Nothing was then said about want of authority of the agent to bind defendant. We are persuaded that there was sufficient in the evidence to justify the submission to the jury of the question of whether the agent was clothed with apparent authority to act generally for defendant in perfecting insurance. While the case must be reversed for the error pointed out, a new trial must be granted. Defendant will recover costs of this court.

WIEST, C. J., and McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.